Next case on the call this morning is Agenda Number 9, Case Number 108-778, People of the State of Illinois v. Aurelia Gonzalez. Good morning, Your Honors. May you please record. Wait just a moment. I'd like you to have the room totally to yourself. Well, thank you. You may proceed. My name is Kathleen Warnick, and I represent the people of the State of Illinois. On March 2, 2006, the parents of little three-week-old baby R experienced every parent's worst nightmare. Their baby was taken from them. She was stolen from them. She was literally taken from the arms of the father by the defendant, who fled with her, and for a period of time, they did not know where their baby was. The evidence of trial established that the defendant had actually faked her pregnancy. She could no longer have children, and so she faked a pregnancy, and on March 1, she told her husband that she was going to have her baby. Of course, her husband knew that she could no longer have children. Instead, the defendant looked for a baby to steal. She found one at the Fanta's Clinic, where she befriended the parents of baby R. While the mother left the room to make a telephone call, and while the father got in line to fill out some paperwork, the defendant offered to hold the baby. Instead, the defendant fled with the baby, and sometime after she fled, she wrapped the baby in a hooded towel that she had purchased that morning. For a period of time, the parents didn't know where their baby was. The father ran outside to look for the child. The mother flagged down a passing squad car, got in the squad car, they went in the neighborhood, but they couldn't find the baby. Thankfully, that baby was found by an alert security guard about 15 minutes later at Rush Medical Center, who noticed the defendant with the baby, and the baby was reunited with the parents. After a jury trial, the defendant was found guilty but mentally ill of aggravated kidnapping and unlawful restraint. However, the appellate court reversed the aggravated kidnapping conviction. The appellate court reasoned that because the baby was constantly in the public view or public awareness, there was no secret confinement, which is an element of aggravated kidnapping. The question therefore before this court is did the actions of the defendant constitute secret confinement? There is no statutory definition of secret confinement, and therefore pursuant to the rules of statutory construction, this court must look to the words popular and ordinary meaning. First, as to the word confinement, when you hold a baby in your arms, when you're literally carrying a baby, there can be no doubt that that is confinement. As to the word secret, in the case of People v. Mulcahy, this court quoted the then current Black's Law dictionary definition of secret. And what secret is defined at is hidden, kept, excuse me, hidden, concealed, not made public, but importantly, the definition then goes on to state, particularly in law, kept from the knowledge of persons affected by the act. In People v. Mulcahy, this court ruled very, very clearly that you can have secret confinement by the place of confinement and the secrecy of confinement, and this is the most important part, or of either. So in Mulcahy, this court recognized that kidnapping can take different forms. Victims are not all put in the same places. Mulcahy is interesting because the victim was kidnapped and the victim was secreted in her own home. And so this court noted that the place of confinement was secret, but the language of this court makes it very, very clear that the confinement was also secret, because even though the victim was right in her own home, her husband didn't know where she was. In People v. Bishop, which is a case even older than People v. Mulcahy, the victim was kidnapped and was taken in an automobile. And way back in 1953, the defendant argued, well, this isn't secret, this car is on the public way, there's no way this is secret. But this court looked at the facts and it recognized that it is easier to keep a victim secret by taking them from place to place in a car than it is by taking them from place to place in a car. And so it's not a matter of statutory construction. The definition says what it says. Yes, something can be hidden, but it's not a matter of statutory construction. It can be hidden or it can be a secret when it's kept out of the knowledge of persons affected by the act. So there is therefore absolutely no reason to resort to the legislature. And this court's precedent clearly recognizes that confinement can have two forms. It can be the secrecy or it can be the place of confinement. The essence of kidnapping is the kidnapper's ability to keep their victim a secret. In the case of a three-week-old baby, that baby can't cry out. That baby can't do anything to let anyone know it's a victim. So it is very easy to take a baby and take it in your arms and keep it a secret. And it doesn't make any difference. Let's look at the facts of this case. Does it matter where that baby was taken? Does it matter if the baby was put in a building? Does it matter if the baby was taken in a car? Or does it matter if the baby was kept on the street? At the end of the day, the parents didn't know where the baby was. And that is the essence of kidnapping. And the interesting thing about this case is that the defendant's family knew she couldn't have children anymore. Therefore, the kidnapping of the baby was more secret if it was kept on a public street than it was if the defendant had gone home and put the baby in a building because the family didn't know that she couldn't have children and therefore the secret was kept. And therefore, the secret would have been up. It is very, very important that this court clarify the essence of kidnapping. In this particular case, the appellate court said the words. They said that kidnapping can be achieved either by the place of confinement or the secrecy of the confinement or of either. But in reality, they didn't apply this court's word. They looked only to the place of confinement. A newborn baby is a most defenseless victim. When you take a baby and you steal it and you go away with that baby, certainly that constitutes the crime of kidnapping. In this particular case, it's a trier of fact issue. A reasonable trier of fact, in this case the jury, could have found that the defendant's actions constituted secret confinement and therefore that she was guilty of aggravated kidnapping. I think that the act was completed. I think she took the baby and she didn't need to take it somewhere. That would be 1A2 of kidnapping. But under A1, all she needed to do was secretly confine the baby. So when she took the baby and she took it away from the parents, that completed the act. So there would be no need for an attempt. And outside of that, we would be left with what? Unlawful restraint? Unlawful restraint, which the defense is not contesting the conviction on that. Why do you contend the defendant did not arouse suspicion while in possession of the baby? Because some stranger noticed her, didn't she? Well, the reason a security guard, she was in a restricted area at Rush Medical Center and the security guard thought there was something suspicious about it, because this is a guilty but mentally ill case. But the fact that she acted strangely doesn't change the fact that her taking of the baby wouldn't ordinarily arouse suspicion. And whatever this court decides, of course, would be precedent for other cases. The taking of the baby, there's nothing about a baby that would alert anybody else's suspicions. She was a woman who was carrying a baby, even if the baby was crying. They would know it was a baby, but they wouldn't know it was a victim of a kidnapping. And that's the reason that she could take the baby. It's not necessary for her to take the baby anywhere special to make her guilty of kidnapping. Tell me again what you meant by a case-by-case analysis of this and the jury could find that the evidence was sufficient in this particular case. And you're also talking about clarifying. I assume that means we need to give a much clearer definition. How those all work together. That's true, but at the end of the day, it's a question for the jury. So under the facts of this case, then the people would submit that the jury correctly found that she committed aggravated kidnapping and that she secretly confined the baby. The defense is arguing that her actions don't fit within the statutory definition. But at the end of the day, the people would assert that when you take the definition and you apply the facts, that the jury was correct and that the appellate court was incorrect. So what more do you want us to say? Well, the people would obviously ask that the court affirm the jury's verdict and to make it clear to the lower courts that kidnapping doesn't just mean kidnapping. It doesn't mean putting somebody in a dungeon. That's the archaic way of looking at kidnapping. But when it's a young child, it's not necessary to put them. They're not fighting back. They're not doing anything to cause the members of the public to help them or do anything. So when you look at it from the kidnapper's perspective, the kidnapper is able to keep the victim a secret no matter where they take them, because they don't have that resistance. Isn't this something that's a policy question for the legislature to handle? Not at all, because this court has defined secret confinement by saying that it can be the place of confinement, which sometimes it is. It could be very easily disposed of that way. The secrecy of the confinement, and so when you use the secrecy of the confinement, you don't have to have necessarily a place of confinement. You look at the kidnapper and you say that this kidnapper is able to keep the person a secret. It's kept from the knowledge of the parents. Again, in this case it didn't make any difference. Is it reasonable to argue that whether this little baby was taken inside a building or inside a car or carried on the street, it was no more or no less secret. It was secret because the parents didn't know where she was. Therefore, we would ask that this honorable court reverse the decision of the appellate court and reinstate the defendant's conviction for aggravated kidnapping. And you would agree then that if this was not a baby, if it was a six-year-old, who could take the kidnapper? Scream and holler, I'm not with my mother, that's not secret. Well, under the statute, if you're under 13 years of age, confinement is presumed to be against your will. Therefore, that young of a child, I think that would be a debatable question. Would it be secret under your definition? It could be secret, yes. Because if an offender was carrying a screaming child away and restraining them, and the child was taken away from the parents, yes, that could be secret. There are cases out there, and the cases seem to hinge on very individual facts, and that's why it's so important for this court to recognize that secret can take on different forms. In this particular case, where it's an infant who can't cry out, who can't do anything, it's important to note that this is also kidnapping. Is it the intent of the kidnapper that we look at at all? The intent of the kidnapper, no, it's the intent, it's the ability of the kidnapper, it's not an intent crime, it's knowingly and intentionally confines. And so it's that the kidnapper is able to keep the victim secret from the knowledge of others in this particular case. What separates kidnapping from restraint? From unlawful restraint. In this case it would be the secrecy of it, because clearly the baby was being restrained. But what the appellate court found is that the fact that the baby was on the public way, so to speak, that it wasn't secret, therefore it wasn't secret confinement, therefore it wasn't aggravated kidnapping, because of course, again, that it's against her will is presumed under the statute. And I may add that clearly, you know, the legislature wanted to protect the youngest victims. They recognized that by putting that part of the statute, that presumption in the statute. So it's clear that reading the statute and reading the language of the statute, the legislature intended for this type of conduct also to be encompassed under aggravated kidnapping. There are no further questions. Thank you. Good morning, Your Honors. I'm Sarah Reynolds from Mayor Brown LLP on behalf of the defendant Apelli. May I please the court? You may proceed, Counsel. There are three things that I'd like to bring to the court's attention. First, nobody is arguing that Aurelia did not commit a crime here. Second, nobody is arguing that Aurelia was charged and convicted of unlawful restraint. That's a felony conviction that carried a three-year sentence. Children in these circumstances are not left unprotected, as the state would have you believe. The General Assembly has developed a carefully calibrated scheme of statutes to protect children in these situations. The kidnapping and related offenses portion of the code contains 20 different ways that a person can be charged and convicted. Under the kidnapping code in particular, there are three different ways that an individual can be charged and convicted of kidnapping. First, A1, that's the seeker confinement provision of the code that we're dealing with here. Secondly, you can be convicted if there's force or threat of imminent force. And thirdly, you can be convicted if there's deceit or enticement. Now, the important thing to note is that for the force and the deceit and enticement provisions of those codes, the statute does not require an intent to secretly confine. There's a higher standard for A1. There's a higher standard for the provision of the code that we're dealing with here. That requires actual secret confinement. So intent here is simply not enough. And the uncontested evidence simply don't fall within the statutory elements required for kidnapping as they were charged in this case. The state cannot prove seeker confinement. Both the state and even the state can't prove secret confinement. Even Justice Gordon, who is the dissenting appellate justice, concede that at all times the baby was within public view. She may have been restrained as she was charged and convicted, but the child was never confined. If the facts have been that this defendant got into a car with that baby. Seeker confinement. The conviction should be upheld. The second thing that I'd like to point out is that the state's reliance on the latter half of that Black's Law dictionary definition for the word secret, that's the language that reads kept from the knowledge or notice of persons liable to be affected by the act, is misguided. And for several reasons. The first is the state is conflating the word secret and confinement in arguing that if you meet that portion of the dictionary definition, you're going to be confined. And the second is that the state is not going to be able to prove seeker confinement. Mr. Reynolds, what's wrong with, as I heard the argument of opposing counsel, that a reasonable interpretation of secret confinement, although broader than you'd like us to adhere to, is that when a baby is involved, a three-week-old baby who's powerless to escape or flee or even move on her own, can't that possibly be confined? And on the secret element, a three-week-old baby can't say, hey, that isn't my mom, that isn't my dad, let me out of here. Why can't we apply a broader definition of secret confinement in the instance of a baby? Well, because the statute treats all kidnapping victims the same. And certainly the general legislator. We have tender years, Dr. Burns, in other areas of the statute. There is not one here. And, in fact, if you look at the statute for aggravated kidnapping, the General Assembly creates an exception for profoundly mentally retarded individuals. So, you know, where there are vulnerable classes within society, the General Assembly knows how to especially, in particular, protect them in statutes. But that's not how the statute reads here. And secondly, if you look at some of the cases, you know, Sykes in particular and, you know, you know, I don't know if you've read the other, I'm blanking on the other name, but there were cases where children were dragged and Sykes, the child, was dragged down an alley and prevented from screaming out with the threat of violence. In Lamke, the child was grabbed and her mouth was covered. And even though those are 10- and 12-year-old children, essentially, you know, they are likewise not able to alert the public or to flee just as an infant would not have been able to. But you don't see any difference between the 10- or 12-year-old being in the arms of a perpetrator versus a baby as to what that's going to look like to the general public as to whether that person is secretly confined or not? I mean, the babies are smaller, so they're easier to secretly confine, right? If she was walking down the street with a baby in a suitcase, then we would have secret confinement here. But because, at all times, the public was able to, you know, the public was able to see the child and was able to recognize the fact that she was carrying a baby, I think that takes us outside of the statute. And, you know, and in fact, in this case, you have Officer Damien Hopkins, who watched Aurelia walk into that restricted area of the hospital. You know, he observed her acting strangely. He tried to get the baby away. He approached her and he apprehended her. And he did all of that before receiving the call over the radio that a child was missing. You know, so the objective evidence here is that the suspicion of the public was aroused. Whether it was a baby or a child, you know, or a 10-year-old child, somebody reacted to the fact that she was acting suspicious and apprehended her. Was the baby covered in a blanket in this case? If it's not obvious to the public that the baby is... I'm sorry? If it isn't obvious, you know, in the facts in this case, the baby was partially covered by a small pink and white baby towel that was identified by multiple witnesses as being a towel that would be used for a baby and not an adult. They were all able to both clearly see and to hear the baby. They could see the baby? They could see the baby, yes. There was a witness within the clinic that informed Mr. Oseguera that somebody had left with the baby. There was a witness outside of the clinic that saw Aureli with the baby and communicated that to Mrs. Oseguera. And then you have Officer Hopkins at the hospital who also saw her. All, you know, and there was clear testimony on the record that they knew she was carrying a baby. I, in blind sight doesn't apply here, does it? I'm sorry? I'm sorry. You may proceed. That's the problem, though. Isn't that the problem with applying it to a baby? That if you are going to kidnap a baby, you're almost better off not putting a towel over its head or, you know, having any type of suspicion. The baby can't yell. The baby can't say anything. You walk down the street, you look like a mother with a baby. That's true. But, you know, and until you, under those circumstances, and clearly the intent even in this case was to have the baby confined to a house or a car and at some point confine her, but until you remove her from the public view and actually confine the child, you're not within the statute. And if you think about it, it makes sense from the General Assembly's perspective because once the child is confined, there's such a, the risk of danger is so heightened for the victim that it makes sense that you would punish and treat the child. But in most cases, this case is a rare instance of really just a case involving unlawful restraint and kidnapping. Most of these cases involve kidnapping plus murder or kidnapping plus sexual assault or something like that. So it makes sense to have, you know, a heightened punishment for confinement. How much sense does it make, you know, as long as you keep the child in the, as long as she walked around with the child or kept the child, and you say she's not guilty of kidnapping? Not until she confines that child. Not until that child is, you know, is confined within something, whether that be a house or a car or the suitcase or whatever. But no, she hasn't completed the crime until she removes the child from public view. And in this case, you know, hypothetically we can imagine circumstances where someone has the baby in public for this extended period of time. But clearly she was going to, you know, she was in route to confine the child. She just never, she was apprehended before she reached that point. The question I asked the opposing counsel about attempt kidnapping, where does that fall? I don't have that statute in front of me, but yes, if there was an attempted kidnapping statute, I'd imagine this would fall within it. She wasn't charged for attempted kidnapping, so it wasn't at issue at the trial. And you don't know what the range of penalties are for that, do you? For attempted kidnapping, I apologize, I do not know. Can I answer any other questions? Hiding in plain sight. Hiding in plain sight, where the way you hide the baby is you don't do anything to cover the baby. You don't cover the baby. You don't cover the baby at all? Would that constitute kidnapping, are you saying? I think under the terms of the statute and under the case law, you can't confine, the only way to confine the baby in public is to somehow make it so that the public is not aware of the fact that a baby is present, right? So the only way to do that and fall under the statute would be to have the baby, you know, fully confined within a coat or in a suitcase or something so that the public was not aware of the fact that a baby was present. It's certainly possible. Right. So, you know, at the end of the day, Aurelia was always in public view. She was always in a busy public clinic, on a busy street, or in a busy public hospital. The baby was clearly restrained. Nobody is arguing that this conduct is not criminal. We're simply arguing that it's not aggravated kidnapping. The child in this case was never confined, and because of that constant public awareness, the appellate court properly overturned the aggravated kidnapping charge in this case, and we ask this court to affirm that decision. Thank you. Thank you. Sometimes the best place to hide something is in plain view of everyone. That's what happened in this case. It's clear that the defense can get to the baby wasn't confined. The baby was carried in the woman's arms. How can that not be confinement? And as to the secret component, there's absolutely no need for the legislature to amend this statute. The statute says secret confinement. In this court, in every single case this court has decided, they have said that you can achieve secret confinement by two ways, the secrecy of the confinement or of either. To adopt the defendant's argument would render this court's language absolutely meaningless, because it would mean that the only way you could kidnap a baby is by placing the baby somewhere, somewhere like a car, somewhere like a house, but that's not what this court has said. This court has said that the other way that you can establish secrecy is by the secrecy of the confinement, not just the place of the confinement. So therefore, if this court looks at all of its prior decisions, all of them, on aggravated kidnapping, this court will see that when this child was taken, and this child was taken from the parents, and the parents didn't know where she was, it didn't matter where she was, because they were persons affected by the acts, it falls squarely, squarely within the definition of secrecy. She was confined, and at the end of the day, she was secretly confined. The jury's verdict was correct, they got it right, and the people are asking that this court affirm the jury's verdicts. This morning? Yes. Are you saying then that secrecy means without knowledge? No, I'm saying that secrecy means kept from the knowledge of persons affected by the act. If there are no further questions, thank you. Just a moment. Mr. Justice, did you have another question? No. Thank you. Case number 108-778 is taken under advisory.